UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUIS DEJESUS | : | PRISONER |
|     PLAINTIFF | : | NO.  3:02CV2250(AVC) |
| | : | |
| V. | : | |
| | : | |
| WARDEN BRIAN MURPHY, | : | |
| CAPTAIN JOHN DOE, C/O | : | |
| JOHN DOE, | : | |
|     DEFENDANTS | : | OCTOBER 4, 2004 |

### THE DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Pursuant to Rule 12(b)6 of the Federal Rules of Civil Procedure, the defendants, Warden Brian Murphy, (and the two John Doe's), respectfully submit this memorandum of law in support of their Motion to Dismiss the plaintiff's Complaint.

The plaintiff brought this Title 42 U.S.C. Section 1983 action against the defendants alleging that they violated his Eighth Amendment rights when they failed to protect him from assault by fellow inmates, and then were deliberately indifferent to his medical needs.  The plaintiff has not stated in what capacity the defendants are sued, so it is presumed to be in their individual capacity only.  The plaintiff is seeking money damages in the form of compensatory and punitive damages.  However, because the plaintiff has not stated a valid claim upon which relief can be granted, his Complaint should be dismissed in its entirety and Judgment should be entered with prejudice in favor of the defendants.

### STANDARD OF REVIEW

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the

light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), cert. denied, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Younger v. Chernovetz*, 792 F. Supp. 173, 174, 779 (2d Cir. 1982) (*quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

Where the plaintiff's complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised," it may safely be dismissed. *Salahuddin v. Cuomo*, 861 F.2d at 42. *See also, Flaherty v. Coughlin*, 781 F.2d 10, 13 (2d Cir. 1983) (Certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that ... detailed fact pleading is required to withstand a motion to dismiss); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (Complaints containing only conclusory, vague or general allegations of wrongdoing on the part of government officials will be dismissed). Thus, in practice, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc.,* 687 F.Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted). A complaint which fails to do so is subject to dismissal for having failed to

state a claim upon which relief can be granted.

Finally, this Court may consider the grievances submitted by plaintiff by way of attached exhibits to his Complaint when deciding the Motion to Dismiss.

> [T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated by reference. [citation omitted] When a plaintiff does not attach to the complaint or incorporate by reference a document "upon which it solely relies and which is integral to the complaint," the court may consider the document on a motion to dismiss without converting to one for summary judgment.

*Newman v. Holder*, 101 F. Supp. 2d 103 (E.D.N.Y. 2000).

In *Newman*, the court dismissed plaintiff's complaint for failing to exhaust his administrative remedies, relying upon a declaration from a staff attorney at the prison who stated that the plaintiff never filed any administrative complaints about his confinement at the prison. Here, in the instant case, the plaintiff alleges that he has exhausted his administrative remedies and attached alleged copies of grievances he alleges were filed in satisfaction of the PLRA requirements. Consequently, these are exhibits which the Court should consider in ruling on the defendant's motion to dismiss.

### **ARGUMENT**

### I. **THE PLAINTIFF'S CLAIMS AGAINST THE JOHN DOE DEFENDANTS MUST BE DISMISSED**

The plaintiff's claims against John Doe #1 and John Doe # 2 must be dismissed because of insufficient service of process. Federal Rule of Civil Procedure Rule 4(e) provides that:

> Unless otherwise provided by federal law, service upon an
> individual from whom a waiver has not been obtained and filed,
> other than an infant or incompetent person, may be effected in
> any judicial district in the United States:
> (1) "pursuant to the law of the state in which the District Court is
> located, or in which service is effected, for the service of a

>  summons upon the defendant in an action brought in the courts of
>  general jurisdiction of the state, or
>  (2) by delivering a copy of the summons and the complaint to the
>  individual personally.... .

In this case, the plaintiff did not serve either of the John Doe defendants because he does not yet know who they are. Since the plaintiff cannot identify them, he cannot serve them with a summons and complaint and thus his claims against the John Doe defendants must be dismissed. F.R.C.P. Rule 4. Furthermore, it has been well over 120 days since the Complaint was filed and the John Doe defendants, as unidentified persons, have not been served. As a result, F.R.C.P. Rule 4(m) dictates that the claims against them be dismissed.

In addition, the naming of John Doe defendants is equally improper under Connecticut law, which dictates that "[c]ivil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties . . ." C.G.S. §52-45a. The Connecticut Practice book does not authorize the naming of John Doe defendants, nor does Connecticut have a fictitious name statute that authorizes naming a John Doe defendant. In those jurisdictions that permit suits against a defendant whose identity or name is unknown, there are statues authorizing the fictitious designation. 67A *C.J.S. Parties* 115 pp. 937-39 (1978).

The Supreme Court of Connecticut has ruled that General Statutes §52-45a "provides in part, that writs in civil actions shall describe the parties by their real names, so that they may be identified." *Buxton v. Ullman*, 147 Conn. 48, 59, 156 A.2d 508 (1959), *appeal dismissed*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed. 2d 989, *reh. denied*, 368 U.S. 869, 82 S. Ct. 22, 7 L. Ed. 2d 69 (1961). The plaintiff's designations of Captain John Doe, and C/O John Doe, are thus improper, as the true identity of the person sued cannot be ascertained. Since the John Doe defendants were improperly included in the

summons and Complaint, service was therefore ineffective against them as individuals. C.G.S. §52-57[1].

Accordingly, given that the plaintiff has not effected proper service upon the John Doe defendants under either federal or state law, these two unidentified individuals should be dismissed from this action.

## II. THE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANT MURPHY, SINCE HE HAS NOT ALLEGED HIS PERSONAL INVOLVEMENT IN ANY ALLEGED CONSTITUTIONAL VIOLATION

Notwithstanding the fact that the plaintiff has not stated any claim upon which relief can be granted for a violation of his Eighth Amendment rights, his claims against Defendant Murphy should likewise be dismissed given that the plaintiff has not alleged that Warden Murphy was personally involved in, or even had any personal knowledge of, the incidents which allegedly violated his rights. Although the plaintiff alleges that he wrote to Warden Murphy in January, 2002, requesting a unit transfer because he feared for his personal safety, he did not identify any particular individual as the basis for that threat, nor include a copy of that letter to support this allegation in his Complaint.

Indeed, a review of the plaintiff's Complaint reveals that he has not alleged any facts which demonstrate that Warden Murphy was personally involved in the incident of his assault. Rather, he alleges that the assault was set up by a unknown correctional officer. The absence of a single allegation that Warden Murphy was personally involved in the incident, or even that he had personal knowledge about it, is grounds for dismissal. "[P]ersonal involvement of a defendant in an alleged constitutional deprivation is a

---

[1] Connecticut General Statutes §52-57 provides in relevant part: "MANNER OF SERVICE UPON INDIVIDUALS . . . Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state."

prerequisite to an award of damages under Sec. 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978). Supervisory officials, such as Warden Murphy may be "personally involved" within the meaning of 42 U.S.C. Sec. 1983 only when their conduct is tantamount to actual participation in the alleged deprivation. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). "A plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Because the plaintiff has not alleged that Warden Murphy participated or assisted the correctional officer is setting up the alleged assault, the plaintiff's claim against Warden Murphy must be dismissed.

Consistent with the requirement that personal involvement is required for a claim under §1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under §1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692-95(1978). Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendant] sufficient to support their liability for wrongful acts," not merely their "linkage in the . . . chain of command." *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985). A supervisory official may only be liable if it is alleged that he learned of the violation and failed to remedy the wrong, or if he created or permitted the policy or wisdom under which the unconstitutional practices occurred. *Williams v. Smith*, 781 F.2d at 323-24; *Meriwether v. Coughlin*, 879 F.2d 1037 (2d Cir. 1989). "A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263(2d Cir. 1986). An official cannot be held liable merely because he or she occupies a high position in the Department of Correction hierarchy. *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995).

In this matter, the plaintiff has failed to allege the personal involvement of Warden Murphy sufficient to establish liability. The plaintiff has failed to identify with sufficient particularity any specific actions undertaken by Warden Murphy to warrant the continuation of this Complaint as to him. Accordingly, the plaintiff's claims against Warden Murphy must be dismissed.

### III. THE PLAINTIFF DID NOT FULLY EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO FILING SUIT AS REQURED BY THE PRISON LITIGATION REFORM ACT

The Plaintiff has alleged that prior to filing suit, he exhausted his administrative remedies and attached copies of three grievances, a level one, two and three grievance, to his Complaint. However, the level one grievance was filed *prior* to the date of the alleged assault, and the level two and three after, but these were not in response to the alleged assault, but rather the grievance for the failure to transfer him after he made a request. By these attachments, the plaintiff has admitted that he did not file a new grievance after he was allegedly assaulted, which was the incident upon which he now bases his Complaint. Moreover, the fact that the none of the grievances attached to the Complaint bear any writing from prison officials, raises a question of their authenticity, and suggests that they were never actually filed, but rather merely created at the time of the drafting of the Complaint in an attempt to avoid dismissal under the Prison Litigation Reform Act.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United

States Supreme Court has held that this provision requires an inmate to first exhaust his administrative remedies for a particular incident, prior to filing suit in federal court. *Nussle v. Porter*, 534 U.S. 516, 532 (2002). And the exhaustion requirement must be completed prior to commencement of the federal action. *See, Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) (holding that an inmate may not avoid the requirements of 42 U.S.C. § 1997e(a) by exhausting administrative remedies after filing a civil rights action in federal court.

Here, the plaintiff alleges, both in his Complaint and in grievances attached to his Complaint, that he first filed a grievance on January 24, 2002, after a letter he allegedly wrote to Warden Murphy requesting a unit transfer due to alleged threats made against him went unanswered. Six days later, on January 30, 2002, the plaintiff was allegedly assaulted. As required by the Department of Correction Administrative Directive 9.6, the plaintiff had thirty days in which to file a grievance in response to that assault. But, the plaintiff did not. Rather, the plaintiff waited forty days after the alleged assault, until March 11, 2002, to file a Level Two Grievance. But, that grievance was not filed in response to the assault, but rather, to follow-up on an alleged non-response to the level one grievance filed regarding his request for transfer. Then, thirty-eight days later, on April 19, 2002, well beyond the five days permitted for level three appeal, the plaintiff allegedly filed a Level Three Grievance, which also bears not writing from any DOC official. Most importantly however, is the fact that, by his own admission, the plaintiff did not file a grievance in response to the alleged assault which gave rise to the instant Complaint, as required under the PLRA. As a result, the plaintiff's Complaint must be dismissed.

IV. **THE PLAINTIFF HAS NOT STATED AN EIGHTH AMENDMENT VIOLATION AGAINST ANY DEFENDANT FOR A FAILURE TO PROTECT HIM FROM ASSAULT**

The plaintiff has not stated facts sufficient to hold Warden Murphy liable for the alleged assault upon his person, the incident which gave rise to this Complaint. First, the plaintiff alleges that he told an unknown C/O of threats being made against him by members of a gang, but did not state specifically the name of any particular individual. Second, though the plaintiff claims to have written Warden Murphy a letter describing his fear and requesting a cell change, again the plaintiff did not identify a single individual as the source of the threat, and the plaintiff admitted that he never received a response from the Warden, thus questioning whether in fact the letter was even in fact received. Third, the alleged assault occurred as the result of a deliberate act of unidentified C/O, an event which was unpredictable and thus unpreventable by the Warden.

The case of *Farmer v. Brennan*, 511 U.S. 825 (1994), holds that in a deliberate indifference claim, the Eighth Amendment requires only that prison officials take reasonable measures to guarantee the safety of inmates in their custody. Based upon the allegations in the plaintiff's Complaint, Warden Murphy cannot be liable to the plaintiff because he has not satisfied these requirements. Indeed, though Warden Murphy allegedly received a letter from the plaintiff that informed him that the plaintiff believed his safety was in jeopardy, the plaintiff was not assaulted until after the deliberate act of an unidentified C/O who allegedly opened the cell door, an act which could not have be anticipated by the Warden and thus for which he cannot be held liable.

In order to succeed in establishing an Eighth Amendment violation, the plaintiff must first satisfy a two-part test; one, that he was incarcerated under conditions posing a

substantial risk of harm, and two, that Warden Murphy knew that the plaintiff faced a substantial risk of harm but disregarded that risk by failing to take reasonable measures to abate the harm. *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996). As the plaintiff's own facts demonstrate, he was not incarcerated under conditions posing a substantial risk of harm, because he was not assaulted until an overt act by an unknown C/O permitted it. Clearly this act was unpredictable, as the plaintiff did not alert the Warden to its possibility in his letter to him. However, even assuming arguendo that the plaintiff did satisfy the first requirement, he still did not satisfy the second part, that Warden Murphy knew the plaintiff faced a substantial risk of harm, but nevertheless disregarded that risk by failing to take reasonable measures to abate e the harm.

      As discussed herein, the letter the plaintiff claims to have written to the warden was never returned, thus questioning if it was ever received. Moreover, even if the letter had been received, the Warden still would not be liable, because the letter was vague in its content. The plaintiff only identified a gang as the source of the threat, not a single identifiable individual. But, gangs are prohibited in the Department of Correction, and thus their membership is kept secret from prison staff. As a result, the Warden would not have had any knowledge of who the individual(s) were that posed a potential threat to the plaintiff and thus would not have been able to move the plaintiff to a safer unit. Only if the Warden knew the identities of the individuals who posed a threat, and the threat was legitimate, could he have been in a position whereby a failure to act might have constituted deliberate indifference. This however, is not the circumstance here. The plaintiff's assault was unpredictable and unpreventable, without a statement of the

individuals responsible for the threats. Since the complaint lacks sufficient facts to substantiate the plaintiff's claims, or even support an inference that the assault could have been predicted or prevented before it occurred, the plaintiff has not stated a claim against Warden Murphy and the Complaint should therefore be dismissed.

V.     **WARDEN MURPHY IS ENTITLED TO QUALIFIED IMMUNITY**

In the event that the plaintiff's Complaint has survived the previous arguments in favor of dismissal, the plaintiff's Complaint must nevertheless be dismissed, since the actions of Warden Murphy are protected by qualified immunity.

The shield of qualified immunity protects government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir. 1998). The availability of the defense turns upon the "objective legal reasonableness" of the allegedly unlawful official action, "assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (*quoting Harlow v. Fitzgerald,* 457 U.S. at 818-19, 102 S.Ct. at 2739). *See also, Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir. 1993). The qualified immunity defense is intended to "strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous

exercise of official authority." *Lee v. Sandberg,* 136 F.3d 94, 100 (2d Cir. 1997) (citations omitted). The rule serves to protect government officials from charges that they knowingly violated standards that were in fact unknowable." *Havekost v. U.S. Dept. of Navy,* 925 F.2d 316 (9th Cir. 1991) (citations omitted).

      Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 252 (2001), *citing Mitchell v. Forsyth,* 472 U.S. 511, 526, 86 L.Ed. 2d 411, 105 S. Ct. 2806 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.,* 533 U.S. at 201. As a result, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Id., citing Hunter v. Bryant*, 502 U.S. 224, 227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991) (*per curiam*).

      In a suit against a state employee for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. According to *Saucier*, a court required to rule upon the qualified immunity issue must first consider this threshold question: taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right? *Id., citing Siegert v. Gilley*, 500 U.S. 226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991). As explained by the Court in *Saucier,*

> In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it

> necessary to set forth principles which will become the
> basis for a holding that a right is clearly established. This is
> the process for the law's elaboration from case to case, and
> it is one reason for our insisting upon turning to the
> existence or nonexistence of a constitutional right as the
> first inquiry. The law might be deprived of this
> explanation were a court simply to skip ahead to the
> question whether the law clearly established that the
> officer's conduct was unlawful in the circumstances of the
> case.

*Id.,* 533 U.S. at 201.

If no constitutional right would have been violated were the allegations established, *Saucier* instructs that there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. *Id.,* 501 U.S. at 201. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officials to avoid the burden of trial if qualified immunity is applicable. As more fully articulated by the U.S. Supreme Court in *Hope v. Pelzer,* ___ U.S. ___, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002),

> Qualified immunity operates to ensure that before they are
> subjected to suit, officers are on notice that their conduct is
> unlawful. For a constitutional right to be clearly
> established, its contours must be sufficiently clear that a
> reasonable official would understand that what he is doing
> violates that right. This is not to say that an official action
> is protected by qualified immunity unless the very action in
> question has been held unlawful, but it is to say that in the
> light of pre-existing law the unlawfulness must be apparent.

*Id.,* ___ U.S. at ___, 122 S.Ct. at 2515 (internal citations and quotations omitted). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the

situation he confronted.  *Saucier v. Katz, supra.*   If the law did not put the official on notice that his conduct would be clearly unlawful, judgment based on qualified immunity is appropriate.  *Id.*

Assuming that the factual allegations in a particular case demonstrate that there exists an underlying constitutional right, and that this right was clearly established in a particularized sense at the time the defendant acted, the final inquiry which must be undertaken in the qualified immunity analysis is the question of whether, despite the nature of the constitutional right at issue, a reasonable official could have been mistaken as to the legal constraints upon his conduct.  If such a mistake was objectively reasonable, the defendant is nonetheless entitled to qualified immunity.

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [governmental] conduct.  It is sometimes difficult for an [official] to determine how the relevant legal doctrine [...] will apply to the factual situation the [official] confronts.   If the [official's] mistake as to what the law requires is reasonable, however, the [official] is entitled to the immunity defense.

*Saucier v. Katz, supra*.  <u>See also, Malley v. Briggs</u>, 475 U.S. 335, 343, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986) (qualified immunity leaves ample room for mistaken judgments).  Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law, or those who act where "the law clearly proscribed the actions" taken."  *Saucier, supra, (quoting Anderson v. Creighton,* 483 U.S. at 638-39).  This aspect of the doctrine of qualified immunity recognizes that state officials are only human, and inevitably, accidents and mistakes of judgment will happen.  Such mistakes alone do not open these official to personal liability.  Wren v. Towe*,* 130 F.3d 1154, 1159 (5th Cir. 1997), *cert. denied,* 525 U.S. 815, 142 L. Ed. 2d 40, 119 S. Ct. 51 (1998);

accord, *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992) ( indicating that qualified immunity affords tolerance for mistakes of judgment traceable to unsettled law, faulty information, or contextual exigencies).; *Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995) (quotations and internal citations omitted); accord, *Oliviera v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995) (immunity ordinarily should be decided by the court in those cases where the facts concerning the availability of the defense are undisputed).

Analysis of the facts of this case establishes that, at its worst, reasonable prison officials could differ as to what action should have been taken, if any, regarding the plaintiff's complaints of threats, and as to whether the non-action of Warden Murphy was appropriate under the totality of the circumstances known to him at the time, (assuming he received and was aware fo the contents of the plaintiff's letter).  Accordingly, for the aforementioned reasons, Warden Murphy is entitled to qualified immunity for his lack of action in regard to the allegations alleged in the plaintiff's Complaint.

DEFENDANTS
WARDEN BRIAN MURPHY,
JOHN DOE #1 AND #2

RICHARD BLUMENTHAL
ATTORNEY GENERAL


    /s/
Robert B. Fiske, III
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
(860) 808-5450
Fed. No. 17831
e-mail: robert.fiske@po.state.ct.us


**CERTIFCATION**

I hereby certify that the following Motion to Dismiss and Memorandum in support thereof, was mailed to the following, this, the 5th day of October, 2004:


Inmate Luis DeJesus, #216025
Cheshire Correctional Institution
900 Highland Avenue
Cheshire, CT 06410

          /s/
Robert B. Fiske, III
Assistant Attorney General